# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| DESALASHIA ADRIEN WILLIAMS, | ) | |
| Movant, | ) ) ) | |
| v. | ) ) | CV416-299 |
| UNITED STATES OF AMERICA, | ) ) ) | CR415-024 |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Guilty-plea convicted of one count of conspiracy to engage in sex trafficking in violation of 18 U.S.C. §§ 1594(c), Desalashia Williams seeks 28 U.S.C. § 2255 relief. Doc. 347;[1] *see also* docs. 7 (indictment); 50 (superseding indictment); 77 (plea agreement); 112 (judgment ordering 156 months' imprisonment). The Government opposes.

## I. BACKGROUND

Williams was indicted for conspiring to and engaging in sex trafficking of minors, and multiple counts of sex trafficking of a minor by force, fraud or coercion, transportation with intent to engage in criminal sexual activity, and coercion and enticement of a minor to

---

[1] The Court is citing to the criminal docket in CR615-001 unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

engage in sexual activity. Docs. 7 & 50. The penalty certifications informed her that she faced *any* term of imprisonment up to and including life for the conspiracy charge. Docs. 8 & 51.

Through counsel, Williams entered into a plea agreement with the Government. Docs. 64 & 77. The agreement set forth a factual basis, an outline of the maximum possible sentence (life) she could receive, an outline of rights that would be waived by pleading guilty, and a statement that she was satisfied with counsel's representation. Doc. 77. Movant certified that she had "read and carefully reviewed this agreement with my attorney. I understand each provision of this agreement, and I voluntarily agree to it. I hereby stipulate that the factual basis set out therein is true and accurate in every respect." *Id.* at 9.

In pleading guilty, Williams admitted that she knowingly and intentionally conspired to engage in sex trafficking. Docs. 77 & 123. She also waived her right to directly appeal or collaterally attack her conviction and sentence, excepting circumstances not relevant here. Doc. 123 at 8-9. The Court found movant's plea to be intelligently, knowingly, and voluntarily made, Williams affirmed it was so, and the

2

Court accepted her guilty plea. *Id.* at 20-21, 27.

At sentencing, the Court reviewed counsel's 25-page objections to the Presentence Investigation Report's (PSR's) factual description, point reductions and enhancement, then heard testimony regarding Williams' relationship with her co-defendant and ex-boyfriend Jeremy Grant. Doc. 127; *see* PSR, Addendum; Docs. 83, 84, 85 & 110. The Court overruled all but two of Williams' objections to the PSR, and adopted the PSR's factual statements, conclusions, and guidelines applications. Docs. 111; 127 at 105-118. The Court found a total offense level of 40 and criminal history category of I, resulting in an advisory guideline range of 292 to 365 months' imprisonment. *Id.* at 118. But it also granted Williams a downward variance given her lack of criminal history, family and community support system, and her co-defendant's dominating role in the enterprise. *Id.* at 118-155. So, it sentenced her to 156 months in prison. Doc. 112. She appealed but later voluntarily dismissed the appeal, making her conviction final. Docs. 128 & 133.

## II.  ANALYSIS

Williams presents three grounds for relief: (1) her plea was not knowing and voluntary because counsel failed to fully explain "the

3

charges, the possible sentencing guideline frame, possible reductions and enhancements, and the pros and cons of proceeding to trial" and incorrectly advised movant that she would not be sentenced to more than five years; (2) counsel failed to interview a possible witness; and (3) counsel failed to file mitigating factors in support of a reduction of sentence. Doc. 134.

### A. Knowing and Voluntary Plea

Despite her clear testimony to the contrary, Williams contends that her guilty plea was not voluntarily, knowingly, or intelligently given. Doc. 134. "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack." *Machibroda v. United States*, 368 U.S. 487, 493 (1962). At the same time, plea bargaining retains its benefits of certainty and efficiency "only if dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977) ("To allow indiscriminate hearings in federal postconviction proceedings . . . for federal prisoners under 28 U.S.C. § 2255 . . . would eliminate the chief virtues of the plea system -- speed, economy, and finality."). While § 2255 exists "to safeguard a

4

person's freedom from detention in violation of constitutional guarantees," "[m]ore often than not a prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea." *Id.* at 71-72.

As a result, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge*, 431 U.S. at 73-74, 80 n. 19 (if the record reflects the procedures of plea negotiation and includes a verbatim transcript of the plea colloquy, a petitioner challenging his plea will be entitled to an evidentiary hearing "only in the most extraordinary circumstances"). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* at 74.

Williams contends that her guilty plea was made unknowingly and involuntarily because (1) her attorney did not fully explain to her what a guilty plea meant, and (2) her attorney induced her to sign the plea deal by promising her sentence would be capped at five years.

5

Doc. 134 at 4 & 6.  Her sworn testimony at the Change of Plea and Sentencing Hearings, however, directly contradicts these contentions.[2] Williams swore that she had spoken with her lawyer about the indictment, her guilty plea, and the plea agreement, and that she understood the charges against her.  Doc. 123 at 9-13.  She also testified that she understood she could receive a prison sentence for her part in the conspiracy for any amount of time, up to and including *life* imprisonment.  *Id.* at 13.  And she swore she understood that the role she played in the conspiracy would be included in the calculation of her sentence.  *Id.* at 18; *see also id.* at 20 (admitting that the reason she was pleading guilty was because she was, in fact, guilty).  Finally, she testified that no one had predicted or guaranteed any sentence to her, nor had anyone done anything "wrong or unfair" to force her to plead guilty.  *Id.* at 15.  Based on her unambiguous and clear testimony, the

---

[2]   Williams is reminded that those who lie to this Court may be prosecuted.  *Hendrix v. United States*, 2014 WL 4204927 at *1, n. 4 (S.D. Ga. Aug. 25, 2014).  Lying under oath, either live or "on paper," is illegal.  *See United States v. Roberts*, 308 F.3d 1147, 1155 (11th Cir. 2002); *United States v. Dickerson*, No. CR608-36, doc. 1 (S.D. Ga. Dec. 11, 2008) (§ 2255 movant indicted for perjury for knowingly lying in his motion seeking collateral relief from his conviction); *id.*, doc. 47 (guilty verdict), cited in *Irick v. United States*, 2009 WL 2992562 at * 2 (S.D. Ga. Sept. 17, 2009 (unpublished); *see also Colony Ins. Co. v. 9400 Abercorn, LLC*, 866 F. Supp. 2d 1376, 1378 n. 2 (S.D. Ga. 2012).

6

Court found Williams was "in full possession of all of her faculties," had "participated knowingly and intelligently" with the "services of a competent defense lawyer who has gone through all the requisite pleadings with her," and that "her offer to plead guilty to [one count of conspiracy to engage in sex trafficking] is knowing" and "voluntary." *Id.* at 21.

Faced with her sworn affirmation of understanding in an otherwise thorough and wide-ranging plea colloquy, and unsworn, self-serving testimony to the opposite effect at a time when she has every incentive to embellish, *see Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014), the Court finds Williams' plea testimony dispositive. Movant cannot now escape her sworn testimony at the Rule 11 hearing, that her plea was both knowing and voluntary, only to now claim that it was neither. *See Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of veracity."); *accord United States v. Gonzalez-Mercado*, 808 F.2d 796, 800 n. 8 (11th Cir. 1987) ("While Rule 11 is not insurmountable, there is a strong presumption that the statements made during the colloquy are true."); *United States v. Stitzer*, 785 F.2d 1506, 1514 n. 4 (11th Cir. 1986) ("[I]f

7

the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely."). Hence, her unintelligent plea claim fails on the merits.[3]

## B. Ineffective Assistance of Counsel

Having reaped the benefit of the plea agreement to avoid a life sentence, movant argues that she was an unwilling participant in the sex trafficking scheme and did not deserve even that reduced sentence imposed by the Court. Doc. 134 at 11-14. Williams faults her lawyer[4]

---

[3] It's also procedurally barred. Williams could have, but didn't, raise her plea claim on direct appeal. *See Bousley* v. United States, 523 U.S. 614, 621 (1998) ("[E]ven the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."). And a movant may not use his collateral attack as "a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004); *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011).

A procedural default may be overcome if the movant can show "cause excusing his failure to raise the issue previously and prejudice from the alleged error." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000). Ineffective assistance of counsel (IAC) "may satisfy the cause exception to the procedural bar," though such a claim "must have merit" to qualify. *Id.* at 1344. As discussed below, however, there is no merit to her IAC claim, so that procedural bar remains fully in effect.

[4] "To prevail on a claim of ineffective assistance of counsel, a prisoner must prove that his counsel rendered deficient performance and that he was prejudiced by the deficient performance." *Castillo v. United States*, 816 F.3d 1300, 1303 (11th Cir. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence." *Putman v. Head*, 268 F.3d 1223, 1243 (11th Cir. 2001).

As to the prejudice prong, a defendant must show "that there is a reasonable

8

for: (1) erroneously advising her that any sentence would be no greater than five years as long as she signed the plea agreement; (2) failing to fully apprise her of the consequences of pleading guilty; (3) failing to interview and secure a "sworn declaration" from her codefendant/ex-boyfriend about the role she "may or may not have played" in the sex trafficking scheme; and (4) failing to argue that her codefendant/ex-boyfriend's abusive behavior should be considered a mitigating factor in her culpability. Doc. 134 at 4-8.

Movant's first, second, and fourth claims are blatantly contradicted by the record. As discussed above, Williams swore under oath that no one had promised her any sentence, that she understood the plea agreement did not guarantee any sentence, that she understood she faced *up to a life sentence*, and that counsel had fully explained the charges against her, the terms of the plea agreement, and the consequences of pleading guilty. Doc. 123 at 9-13, 15, 18;

---

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Matire v. Wainwright*, 811 F.2d 1430, 1434 (11th Cir. 1987) (same); *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[A]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some *conceivable* effect on the outcome of the proceeding is insufficient to show prejudice.").

9

*Blackledge*, 431 U.S. at 74. And counsel argued (at length, on more than one occasion, and despite voluminous evidence to the contrary) in mitigation of her significant role in the enterprise that Williams was an unwilling participant in the sex trafficking scheme -- that she was forced into it by her intimidating, volatile, manipulative boyfriend. Doc. 127 at 44, 72-73, 87, 121-23, 126, 132-34, 150; *see also* docs. 83, 85 & 110.

Finally, Williams' third claim that counsel should have investigated some unspecified statements that Grant *may* have made to the Court is meritless. There is nothing aside from Williams' broad-brush assertion -- that something Grant *may* have said about what she "may or may not have done" during their operation to list, manage, and sell the sexual services of several minors over the course of half a year -- to indicate that Grant would have actually offered exculpatory evidence. And such a vague, bare assertion, without a hint of factual support, is insufficient to obtain relief under § 2255. *United States v. Badolato*, 701 F.2d 915, 926 (11th Cir. 1983) (petitioner's argument that counsel should have compelled witnesses to testify because that testimony would have surely been beneficial to him was "sheer fantasy"); *Tejada v.*

10

*Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (habeas relief requires more than "conclusory allegations unsupported by facts").[5]

For that matter, Williams received the best bang for her buck in the plea agreement -- had she proceeded to trial, she more than likely would have received more than the 156 months she was given. *See* PSR at ¶¶ 1-34 (detailing the weight of evidence stacked against Williams and the victim impact her actions had had); 118-19 (Guidelines advisory range and statutory maximum sentence of life imprisonment); *see also* 127 at 50-87 (testimony by three minor victims about Williams' active

---

[5] "[C]ounsel has a duty to make reasonable investigations *or* to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690-91 (emphasis added). To be effective, counsel is not required to "pursue every path until it bears fruit or until all hope withers." *Williams v. Head*, 185 F.3d 1223, 1237 (11th Cir. 1999); *see also Rogers v. Zant*, 13 F.3d 384, 387 (11th Cir. 1994) (the requirement to "investigate" a case "reflects the reality that lawyers do not enjoy the benefit of endless time, energy, or financial resources."). And, "a court should be highly deferential to those choices . . . that are arguably dictated by a reasonable trial strategy." *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir.1993).

"Laundry list" claims of deficient representation -- offered without explaining, with full citation to the record, how they were viable *and* that no reasonable lawyer would have missed them -- do not an IAC claim make. A typical IAC claim succeeds only where counsel has, metaphorically speaking, shot at the side of a barn yet missed. *See Sullivan v. Secretary, Fla. Dep't. of Corr.*, 837 F.3d 1195, 1205 (11th Cir. 2016) (an attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance, as element of ineffective assistance of counsel); *see also id.* at 1206 (in prosecution for fleeing and attempting to elude a law enforcement officer, trial counsel was ineffective in presenting a voluntary intoxication defense long after it had been statutorily abolished, instead of advising defendant to accept state's pretrial plea offer).

11

role in the enterprise, including personally taking their photos, listing their information online, taking calls from potential clients, negotiating prices and sexual services to be rendered, setting up dozens of encounters a day, and accepting payment from the clients), 119 (victim statement from minor Jane Doe 1). Thus, she cannot possibly demonstrate *any* prejudice suffered thanks to counsel's supposed deficiencies. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," where he would have received a better outcome); *Strickland*, 466 U.S. at 695 (predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker."); *Evans v. Meyer*, 742 F.2d 371, 375 (7th Cir. 1984) ("It is inconceivable to us . . . that [defendant] would have gone to trial . . . or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received"). Whatever her counsel may have done to encourage her to plead to the lesser charge, movant was *well-served* by

his advice to take the offered plea agreement.

## III. CONCLUSION

Accordingly, Desalashia Williams' § 2255 motion should be **DENIED**. For the reasons set forth above, it is plain that she raises no substantial claim of deprivation of a constitutional right. Accordingly, no certificate of appealability should issue. 28 U.S.C. § 2253; Fed. R. App. P. 22(b); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2255 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). Any motion for leave to appeal *in forma pauperis* therefore is moot.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district

judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; see *Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this __6th__ day of April, 2017.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA